*160 OPINION.
TueneR:
The question here is whether the action taken by the corporation under the resolution of March 1,1929, whereby the debit balances of the stockholders were satisfied by charges against surplus, constituted dividends.
By section 115 (a) of the Revenue Act of 1928, the term “dividend” is defined as “any distribution made by a corporation to its shareholders, whether in money or in 'other property, out of its earnings or profits accumulated after February 28, 1913.” In section 115 (b) of the same act, it is provided that “every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits.”
No question is raised as to the sufficiency of corporate surplus for the payment of a dividend in the amounts herein, and since the facts show that the amounts in question were charged against surplus, we must assume that surplus was sufficient for the payment of such a dividend.
It is also assumed that all of these amounts were originally paid or credited to the stockholders as loans or advances, since there is no contention by either party that the amounts in question were-dividends or other than loans prior to the resolution of March 1, 1929, and the action taken thereunder.
The respondent contends that the resolution constituted a release to the debtor stockholders of their obligations, and, in substance, the declaration of a dividend. The petitioners deny that the corporation released, or intended to release, the stockholders of any indebt-ednesses and call attention to the eventual formal surrender of stock in 1931 and 1932, in settlement of the debit balances involved as evidencing the fulfillment of an intention on the part of both the corporation and its stockholders that the withdrawals should be repaid in full. It is also argued that, even though the forgiveness by a corporation of the indebtedness of its stockholders does under certain circumstances amount to the payment of a dividend, it can not be said that a dividend was declared and paid in the cases of these petitioners with reference to the amount of $102,679.04, representing advances made to Charles Hudson and to Galvin Hudson, administrator of the estate of Charles Hudson, since the advances were not made to these petitioners. The further contention is made *161 that there was no formal declaration of a dividend at any time and it is unreasonable to assume the declaration and payment of a dividend in the manner described, since petitioner Galvin Hudson had received no advances personally, and a distribution such as this, not being in proportion to ownership of the stock, would result in a loss to him personally of at least $10,000.
The last contention of the petitioners has been decided adversely to them in several cases. It is not necessary that a dividend be paid to the stockholders in proportion to their stock holdings. Lincoln, National Bank, Executor, 23 B. T. A. 1304; aff'd., 63 Fed. (2d) 131; Ida L. Dowling, 13 B. T. A. 787; Joseph Goodnow & Co., 5 B. T. A. 1154. Neither is it necessary that a dividend be formally declared. Chattanooga Savings Bank v. Brewer, 17 Fed. (2d) 79; certiorari denied, 274 U. S. 751; Security First National Bank of Los Angeles et al., Executor, 28 B. T. A. 289; Leo G. Hadley, 6 B. T. A. 1031; aff'd., 36 Fed. (2d) 543.
It is also well settled that the cancellation of indebtedness of stockholders of a corporation is sufficient to constitute payment of a dividend. Moses Cohen, 28 B. T. A. 190; aff'd., 77 Fed. (2d) 184; certiorari denied, 296 U. S. 610; Ennalls Waggaman, 29 B. T. A. 473; aff'd., 78 Fed. (2d) 721; certiorari denied, 296 U. S. 618; Hugh H. Miller, 25 B. T. A. 418; Ida L. Dowling, supra; F. W. Fitch, 27 B. T. A. 615; aff'd., 70 Fed. (2d) 583. In the cases cited there was normal cancellation of the indebtedness of stockholders, while here the petitioners contend that there was no cancellation or release by the Hudson & Hugger Co. of the balances owing by them.
Giving careful consideration to the resolution and to the action taken in connection therewith, we are unable to reach a conclusion other than that reached by the respondent. There is no question that on the accounts of the corporation, the stockholders were relieved of liability. Surplus was reduced by the amount of the debit balances and the stockholders were relieved of the charges therefor by credits to their accounts from surplus. This was regular and in order. The corporation had a distributable surplus and the directors had authority to order distribution. If the stockholders desired that surplus be used to relieve themselves of the charge for balances owing by them to the corporation, they were within their rights and there was no one to complain. These petitioners say, however, that while the action taken was in the form described, there was an understanding that they would repay the amounts with which they were credited. That understanding was expressed in the resolution to the effect that the company still owned its “equity” in the debit balances and at such time as might be “convenient and appropriate” proper settlement would be made. This understanding *162 certainly was not couched in terms ordinarily applicable to an agreement between debtor and creditor for payment of the debtor’s account. Just what was meant by the equity of Hudson & Dugger Co. is conjectural, but the meaning of the remainder of the resolution relied on by the petitioners seems to us apparent and is that the stockholders, if and when “convenient and appropriate” to them, would restore the surplus so exhausted. There is nothing in this language which indicates that the debtor-creditor relationship was intended to continue.
The petitioners also rely on their subsequent action in 1931 and 1932 in surrendering stock of a par value equal to the amount of the debit balances. Consideration of the practical effect of the surrender of the stock and the occasion therefor gives little support to that argument. In the first place the resolution providing for the surrender of the stock shows on its face that one of the principal reasons for taking any action was the controversy with the Federal Government over the issues involved in these cases. Furthermore there is nothing to show that the actual value of the stock surrendered had any relation whatever to the amount of the debit balances in satisfaction of which the said stock was surrendered. Keeping in mind the fact that the resolution of March 1, 1929, had, by its expressed terms, eliminated the stockholders’ accounts from corporate assets, the surrender of the stock in 1931 and 1932 did not serve in any way to either increase or decrease the assets of the corporation, and except for a slight change of the proportions in which the stock was held, the position of the stockholders with reference to the corporation and its assets was not changed. It served only as an adjustment of the stock holdings between the members of the Hudson family.
With reference to the contention that the advances to Charles Hudson and to Galvin Hudson, as administrator, can not be considered as advances to these petitioners and a release thereof treated as a dividend to them, it is interesting to note that by their own argument as to the effect of the resolution of March 1, 1929, and of the surrender of stock in 1931 and 1932, the petitioners treat themselves as having been liable in equal proportions for the total amount of these advances. Furthermore, there is no doubt that they were actually liable therefor. The amounts so advanced to Charles Hudson and to the administrator of his estate were liabilities of the estate, and the facts show that the only assets out of which these liabilities could have been satisfied were the shares of stock in Hudson & Dugger Co. The petitioners point out that this stock was distributed in 1926 by order of the probate court. Under the law of Tennessee, however, as in other states, a probate court is not per *163 mitted to make a distribution of the assets of an estate without making provision for the payment of outstanding liabilities; and while it is true that under section 8335 of the Tennessee Code provision is made that surplus assets of an estate be distributed within 18 months after administration is granted, it is further provided in section 8336 that “every legatee and distributee, before receiving his portion of the decedent’s estate, or some other for him, shall give bond with two or more sufficient sureties, or one corporate surety, in a penalty double the amount of his share, payable to the state, conditioned that if any debt or debts truly owing by the deceased shall be afterwards sued for and recovered or otherwise duly made to appear, said legatee or distributee shall refund and pay his ratable part of such debt or debts out of the part or share so allotted to him.” We may not assume that in making the distribution in this case the provisions of the law of Tennessee were not complied with. By accepting the distribution of the stock in 1926, the petitioners assume the liability for the debts of the estate to the extent of the stock so distributed, and a release of liability so incurred, in so far as the question in this case is concerned, is no different from a release of liability incurred as a result of advances made directly to the petitioners themselves.
Accordingly we conclude that the liabilities of the petitioners for the debit balances in question were released and canceled in the taxable year and hold that such release and cancellation was a dividend within the meaning of section 115 (a), supra.
Reviewed by the Board.

Decision will be entered for the respondent.